Dear Mr. Becker, Jr.
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the New Orleans Public Belt Railroad ("NOPB"), you have asked for our opinion on the following questions:
1. Is it permissible under Louisiana law for NOPB to allow railroad cars owned by NOPB and operated by NOPB employees to be used by tax exempt organizations including:
a. Charitable organizations under United States Internal Revenue Code ("IRC") Section 501 (c)(3). Specifically, may these organizations offer a trip on the cars as an auction item at a fundraiser?
b. Not for profit business organizations under IRC Section 501 (c)(6).
c. Social welfare organizations under IRC Section 501 (c)(4).
2. Is it permissible under Louisiana law for NOPB to allow railroad cars owned by NOPB and operated by NOPB employees to be used by for profit business organizations? *Page 2 
3. Is it permissible under Louisiana law for NOPB to use its employees and equipment during business hours to renovate public playgrounds or parks?
4. Is it permissible under Louisiana law for NOPB to give monetary contributions to tax exempt organizations out of its budget?
All of the questions posed contemplate the expenditure of public funds and/or property. As such, an analysis under Article VII, Section 14 of the Louisiana Constitution is warranted.
Louisiana Constitution Article VII, Section 14 provides, in pertinent part, the following:
Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
Article VII, Section 14 "is violated when public funds or property are gratuitously alienated." Board of Directors of the IndustrialDevelopment Board of the City of Gonzales, Louisiana, Inc. v. AllTaxpayers, Property Owners, Citizens of the City ofGonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11, 20.
It has been the consistent opinion of this office that in order for an expenditure of public funds to be permissible under Louisiana Constitution Article 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. See La. Atty. Gen. Op. Nos. 09-0271, 09-0259, 09-0251, 09-0146 and 07-0050A.
La.Rev.Stat. 33:4530 provides the following with respect to the NOPB:
§ 4530. New Orleans public belt railroad; operation by city of New Orleans through public belt railroad commission
A. Except as hereinafter provided in § 4531, the city of New Orleans shall continue the operation of a public belt railroad by and *Page 3 
through a commission to be known as the Public Belt Railroad Commission for the city of New Orleans, to be composed of the mayor of said city and sixteen citizen taxpayers who shall now and hereafter be chosen in the manner and for the terms provided in Ordinance 2683, New Council Series of the city of New Orleans, approved October 8, 1904, except that, in case any commercial organization mentioned therein shall cease to exist, and there be no other organization performing similar functions, the members thereof appointed on recommendation of such organization shall be appointed by the public belt railroad commission. The mayor of the city of New Orleans shall be the president of said commission and shall have the right to vote at all meetings. The president pro tem shall be chosen by the commission from those members appointed from the commercial organizations described in said city ordinance. The present members of the commission shall continue to serve until the expiration of their terms.
B. The city of New Orleans by and through the said commission shall have the power to make contracts, acquire lands, leases and other forms of property necessary for the operation of a railroad system, either by purchase, expropriation, or otherwise, and shall have the right to operation within or without the parish of Orleans.
C. The control, operation, management and development of the public belt railroad system shall be exclusively vested in said commission, provided, however, that said public belt railroad commission shall have the power and authority subject to compliance with any applicable provisions of the charter of the city of New Orleans to contract with other firms or corporations, either public or private, or local governmental subdivisions or political subdivisions, or state agencies, for the operation, management and development of the public belt railroad system, provided that the council of the city of New Orleans shall determine that the interests of the city of New Orleans and the port of New Orleans would best be served thereby and shall approve the terms and conditions of any such contract; provided that any such contract shall recognize and maintain the rights of the employees of the public belt railroad system under existing labor contracts and applicable law.
Pursuant to this statute, the "control, operation, management and development of the public belt railroad system shall be exclusively vested" in the NOPB. The NOPB has the power to "make contracts, acquire lands, leases and other forms of property necessary for the operation of a railroad system, either by purchase, *Page 4 
expropriation, or otherwise, and shall have the right to operation within or without the parish of Orleans." The NOPB is further empowered to contract with "other firms or corporations, either public or private, or local governmental subdivisions or political subdivisions, or state agencies, for the operation, management and development of the public belt railroad system . . ." Such contracts must be in compliance with any applicable provisions of the charter of the city of New Orleans and are further subject to the approval of the New Orleans City Council.
Turning attention now to your first and second question, our office addressed somewhat similar issues previously. For example, in Attorney General Opinion No. 02-0363, we opined that the Caldwell Parish School Board could contract for the non-exclusive use of its publicly owned property by a religious organization. There, the School Board had already adopted a policy that set forth a fee schedule for any organization wishing to rent the property and had expressed a commitment not to treat religious organizations any differently than any secular organization. Similarly, Attorney General Opinion No. 03-0218 concluded that the Town of Elton could permit limited short-term uses of public property upon payment of a set fee schedule. In this case, the Town of Elton wanted to permit the use of a town building for a church group to hold Bible studies. We concluded that there was no legal prohibition against permitting a non-resident use of the town building when the rental fee was uniformly paid by those seeking the rental. We also opined that it would appear to be reasonable to allow use of the building on a first come, first served basis so as not to be biased.
It is our understanding that the railroad cars that are at issue are cars that are no longer in use and are essentially of "museum" type. Further, the contemplated uses are all limited short-term uses similar in nature to the uses referenced in Attorney General Opinion Nos. 02-0363 and 03-0218. Therefore, with respect to your first and second question, we believe that the NOPB has the discretion to allow limited short-term uses of NOPB cars that are no longer in use, provided it obtains in return a value or benefit that is commensurate with such use in order to avoid a violation of Louisiana Constitution Article VII, Section 14. We also advise the NOPB to develop a policy concerning, among other things, the manner in which the limited short-term uses will be scheduled, the amount of rental fees, and the type and amount of insurance required.
With respect to your third and fourth question, it is our opinion that the NOPB has no legal authority to use its employees and equipment during business hours to renovate public playgrounds or parks, nor does it have the legal authority to give monetary contributions to tax exempt organizations out of its budget. Nothing in La.Rev.Stat. 33:4530 references or authorizes NOPB to renovate public playgrounds or parks, or to fund tax exempt organizations. It is our opinion that such uses of public funds and property do not comport with the governmental *Page 5 
purpose NOPB has the legal authority to pursue and would amount to a prohibited donation of public funds pursuant to Article VII, Section 14 of the Louisiana Constitution.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
Yours very truly,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ MICHAEL J. VALLAN Assistant Attorney General
JDC/MJV/crt